Filed 12/13/24  Abelar v. Providence Health System-Southern Cal. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DEE ANN ABELAR et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> PROVIDENCE HEALTH SYSTEM-SOUTHERN CALIFORNIA et al., <br><br> Defendants and Respondents. | B321885 <br><br> (Los Angeles County Super. Ct. No. BC641637) |

APPEAL from judgments and orders of the Superior Court of Los Angeles County, David A. Rosen, Judge.  Affirmed in part and dismissed in part.

Gary Rand & Suzanne E. Rand-Lewis, Suzanne E. Rand-Lewis and Timothy Rand-Lewis for Plaintiffs and Appellants.

Kelly, Trotter & Franzen and David P. Pruett for Defendant and Respondent Providence Health System-Southern California.

Reback McAndrews & Blessey, Raymond L. Blessey, Tracy D. Hughes; Greines, Martin, Stein & Richland and Alana H. Rotter for Defendants and Respondents Simi Valley Hospital and Health Care Services and Adventist Health System/West.

La Follette Johnson DeHaas Fesler & Ames, Adam L. Robinson, Christopher P. Wend; Cole Pedroza, Kenneth R. Pedroza, Cassidy C. Davenport and Kristin Tannler for Defendants and Respondents Wayneinder S. Anand and Babak Hakimisefat.

Hall Hieatt Connely & Bowen, Jennifer Jo Henderson and Mark B. Connely for Defendant and Respondent Mayur Trivedi.

_____

Plaintiffs and appellants Dee Ann Abelar and her husband Brian Abelar (collectively, the Abelars)[1] brought an action for medical malpractice and loss of consortium against, as pertinent here, defendants and respondents Providence Health System-Southern California (Providence); Dr. Wayneinder S. Anand, Dr. Babak Hakimisefat, and Dr. Mayur Trivedi (collectively, the three doctors); Adventist Health System/West (Adventist); and Simi Valley Hospital and Health Care Services, also known as Simi Valley Hospital and doing business as Adventist Health Simi Valley (Simi). The Abelars appeal from judgments of nonsuit in favor of Providence, the three doctors, Adventist, and Simi, contending that the trial court abused its discretion by excluding the Abelars' medical expert from testifying, and the nonsuit was otherwise improper. The Abelars also challenge the

---

[1] Because the Abelars share the same last name, we refer to Dee Ann Abelar by her first name. We intend no disrespect.

2

trial court's orders imposing Code of Civil Procedure[2] section 128.5 sanctions against their attorneys and denying in part their motions to tax costs, including expert witness fees under section 998. We affirm the judgments and dismiss the appeals of the orders imposing section 128.5 sanctions and awarding expert witness fees.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    *The Complaint*

In December 2016, the Abelars filed this action for professional negligence and loss of consortium against several physicians, medical corporations, hospitals, and the hospitals' owners, including Providence, the three doctors, Adventist, and Simi.[3] The operative complaint alleges that, in October 2015, Dee Ann underwent surgery at Providence Saint Joseph Medical Center (St. Joseph) to remove a meningioma compressing her optic nerve. Dr. Anand and Dr. Hakimisefat were her physicians at St. Joseph. Two days after her surgery, Dee Ann was discharged. The following month, Dee Ann suffered a grand mal seizure and was admitted to the emergency department at Simi. She continued to have seizures and other symptoms, and in late November 2015, she was readmitted to Simi and was treated by Dr. Trivedi and Dr. Jeffrey Mora. Dee Ann was then transferred

---

[2]    All subsequent undesignated statutory references are to the Code of Civil Procedure.

[3]    The complaint alleged additional causes of action, but after demurrers, motions to strike, and a stipulation by the parties, the only causes of action remaining against Providence, Simi, Adventist, and the three doctors were for professional negligence and loss of consortium.

3

to yet another hospital and had a second surgery, during which parts of her brain and skull had to be removed. In December, physicians determined that Dee Ann had an infection. The complaint alleged the infection was present throughout the time Dee Ann was treated at Saint Joseph and Simi, and that the failure to diagnose and treat the infection fell below the standard of care.

## II. *The Abelars' Designation of Their Medical Expert and the Defendants' Deposition Attempts*

In March 2021, the Abelars designated Dr. Leslie Rand-Luby as their retained medical expert on issues that included the applicable standards of care, whether the standards were met, and causation. The Abelars had previously relied on a declaration by Dr. Rand-Luby to oppose a summary judgment motion filed by former defendant Dr. Mora. In that prior case, because the Abelars had failed to comply with the trial court's orders to produce Dr. Rand-Luby for deposition, the court struck her declaration as an evidentiary sanction, explaining that, despite having moved unsuccessfully for a protective order as to Dr. Rand-Luby's deposition, the Abelars had filed a second, "entirely frivolous" motion for protective order in bad faith and as "subterfuge for their apparent strategic decision to avoid" a deposition that the court had already ordered. The court subsequently granted Dr. Mora's summary judgment motion.[4]

The Abelars' March 2021 expert witness designation included a declaration from the Abelars' attorney that Dr. Rand-

---

[4]     In *Abelar v. Mora* (Oct. 25, 2022, B311451) [nonpub. opn.], this court affirmed the trial court's judgment in favor of Dr. Mora.

4

Luby had agreed to testify and was sufficiently familiar with the pending action to submit to a meaningful oral deposition on the testimony she was expected to give at trial. With trial set for May 3, 2021, the defendants noticed Dr. Rand-Luby's deposition for March 31, 2021.[5] On March 18, 2021, the Abelars' attorney told the defendants that Dr. Rand-Luby's deposition could not take place as noticed because counsel would be unavailable due to health concerns. The parties thus stipulated to continue the trial for at least 60 days. On March 25, 2021, the trial court continued the trial to August 23, 2021 and instructed the parties, upon request, to provide expert availability for deposition.

Defense counsel sent the Abelars' counsel multiple emails in March and April 2021 requesting expert deposition dates. The Abelars' counsel failed to provide any such dates.

In late April 2021, defendants served a notice to take Rand-Luby's deposition on May 12, 2021. The Abelars did not respond to the notice. Defense counsel sent an email to the Abelars' counsel on May 6, 2021 asking if the deposition would proceed as noticed and, if not, to provide alternative deposition dates no later than May 20, 2021. On May 6th, the Abelars' counsel

---

[5] Although Drs. Anand and Hakimisefat noticed Dr. Rand-Luby's March 31, 2021 deposition, the record shows that the parties treated notices and communications by some defendants as being sent on behalf of all defendants. The defendants also joined in each other's motions. Similarly, Providence, Simi, Adventist, and the three doctors refer to themselves collectively as "defendants" in their joint respondents' brief and characterize notices, communications, and motions by some of the defendants as having been sent or made by all defendants. Unless otherwise indicated, we generally do so as well.

replied, "[W]e can't do next week," and asked defense counsel to check back that following week. Defense counsel immediately responded with an email stating that, despite defendants' repeated requests for deposition dates, as well as representations by the Abelars' counsel to the court that dates would be provided, no dates had been offered. Defense counsel continued, "If dates are not provided by May 20, 2021, as requested . . . , we will have no choice but to move to compel." Nevertheless, the Abelars failed to provide any alternative dates for Dr. Rand-Luby's deposition.

### III. *The Defendants' Motion To Preclude Dr. Rand-Luby from Testifying or, in the Alternative, To Compel Deposition, and the Court's Ruling on the Motion*

Around late May 2021, defendants moved to preclude Dr. Rand-Luby from testifying at trial or, in the alternative, to compel her deposition. The Abelars opposed the motion. On June 25, 2021, the trial court ordered the Abelars to confirm on or before July 1, 2021 the date, time, and place of Dr. Rand-Luby's deposition, and to produce Dr. Rand-Luby for deposition "no later than July 12, 2021, absent substantial good cause, and in no event later than July 30, 2021."

Stating it "want[ed] to be very clear to" the Abelars and their counsel, the trial court said it would "likely be of a mind to exclude [the] expert" if the Abelars failed to comply with any part of its order. The court also explained it was setting the deposition no later than July 12, 2021 so it would occur before the mandatory settlement conference set for July 13, 2021. When the Abelars' attorney said she lacked control over Dr. Rand-Luby's schedule, the court responded that it was "highly unlikely" it would consider the "excuse [that] the expert had . . . surgery

6

scheduled" as substantial good cause for refusing to make the expert available for deposition. The Abelars' attorney stated she understood.

## IV. *The Defendants' Further Attempts To Depose Dr. Rand-Luby*

On July 1, 2021, at 10:00 p.m., the Abelars' attorney sent an email selecting the afternoon of July 12, 2021 as the time and date for Dr. Rand-Luby's deposition. Defendants served a notice to take the expert's deposition on July 12th, along with a request that Dr. Rand-Luby produce certain documents or other materials, including electronically stored information, no later than three business days before the deposition.

On July 8, 2021, at 11:34 p.m., which was less than three business days before the Monday, July 12, 2021 deposition, the Abelars' counsel emailed Dr. Rand-Luby's curriculum vitae and declarations, the Abelars' expert designation, and deposition transcripts. No other documents—including requested medical records, timesheets, billing statements, or correspondence—were produced. On July 12, 2021, rather than produce Dr. Rand-Luby for deposition, the Abelars applied ex parte for an order continuing the deposition on the ground that their attorney was unavailable due to illness. The trial court granted the ex parte application, ordered the Abelars to produce Dr. Rand-Luby for deposition no later than July 20, 2021, and reset the mandatory settlement conference for July 27, 2021.

The Abelars' counsel sent an email again selecting the afternoon of the last possible day—July 20, 2021, at 1:00 p.m.— for the deposition. Defendants served another deposition notice accordingly, with another request that Dr. Rand-Luby produce

7

documents no later than three business days before the deposition.

On July 20, 2021—after failing to produce any additional documents—the Abelars' counsel sent defense counsel an email canceling Dr. Rand-Luby's deposition set for that afternoon, claiming that the expert "was just called into work for emergency surgeries." That same day, defendants advised that they would move to exclude Dr. Rand-Luby from testifying at trial and for terminating and monetary sanctions. Stating that the Abelars' counsel should "[c]onsider this our meet and confer," defense counsel explained that Dr. Rand-Luby had been ordered to appear for deposition by July 20th, after having previously been ordered to appear by July 12th; the court had specifically told the Abelars' counsel that the expert's surgery schedule would not constitute substantial good cause for further delay; defendants had been seeking to depose the expert since March 2021; and the Abelars had twice chosen the last possible day as the deposition date.

## V.  *The Defendants' Motion for Evidentiary, Terminating, and Monetary Sanctions, and the Trial Court's August 3, 2021 Order*

On or about July 21, 2021, the defendants moved for evidentiary, terminating, and monetary sanctions against the Abelars. Among other relief, defendants requested the exclusion of Dr. Rand-Luby from testifying at trial. They relied on the Abelars' multiple failures and violations of court orders to produce Dr. Rand-Luby for deposition, including in connection with Dr. Mora's summary judgment motion. They also pointed to the Abelars' failure to produce any additional documents in connection with Dr. Rand-Luby's deposition.

8

The defendants further argued that the Abelars should have ensured Dr. Rand-Luby had not agreed to make herself available to handle emergencies on the day the Abelars chose for her deposition, particularly given the trial court's prior admonitions about using the expert's surgery schedule as an excuse for delay. The defendants provided evidence of other surgeons who, they argued, could have performed the surgeries that the Abelars claimed were the emergency surgeries requiring cancelation of the deposition. They also asserted the Abelars could have made their expert available for deposition earlier—rather than consistently selecting the last possible date when given a choice, leaving no room for any "actual" unanticipated emergencies, and then repeatedly delaying the deposition.

On August 3, 2021, after hearing argument, the court excluded Dr. Rand-Luby from testifying in the case. The court explained that the Abelars acted in bad faith and "in complete defiance of the Court's Orders as to their expert through today," and "presented no evidence of Dr. Rand-Luby's unavailability." The court imposed monetary sanctions against the Abelars and their attorneys of record but did not dismiss the Abelars' complaint.

After the court excluded Dr. Rand-Luby from testifying at trial, defendants argued the case should be dismissed because the Abelars could present no expert testimony on the applicable standards of care, whether those standards had been breached, and whether the alleged breaches harmed the Abelars. The trial court denied the motion to dismiss because the Abelars claimed they could call Dee Ann's treating physicians to testify at trial on those issues.

9

**VI.** *The Court's Order Setting an Evidence Code Section 402 Hearing, Continuances of the 402 Hearing, and the Abelars' 402 Hearing Witness List*

In August 2021, the Abelars applied ex parte to continue the trial, but withdrew the application on August 23rd, the day of trial. Observing that there was an oral stipulation to continue the final status conference to November 2021, the court continued the trial to November.

At the final status conference, the court sua sponte set an Evidence Code section 402, subdivision (b) hearing (402 hearing) for December 7, 2021. The court explained that the hearing would address the admissibility of any opinion testimony to be presented at trial by the Abelars regarding the applicable standard of care, breach of that standard, and causation.

On December 7, 2021, the Abelars' counsel appeared at the 402 hearing without witnesses. The trial court reminded counsel that, in August, her associate had said the Abelars intended to call treating doctors as nonretained experts. The court observed that nearly four months had since elapsed, and said it expected those nonretained experts to testify at the hearing that day to allow it to determine the admissibility of their testimony.

Counsel responded that she had not understood the court's order to require her to present the nonretained expert witnesses' testimony, was not prepared to do so, and would be unable to present any of them "if the trial begins now." Counsel stated that, in her experience, a 402 hearing only involved a proffer from counsel and not live testimony. The court replied that its requirements for the hearing had been clear, and the Abelars' counsel should have notified the court and defendants if she was not prepared to present witnesses that day. Nevertheless, the

10

court stated it was prepared to hear counsel's proffer of what witnesses would be testifying and what they would say. The Abelars' attorney, however, stated she "can't do that at the present time."

The trial court continued the 402 hearing to January 2022 and stated, "to be elementarily clear," the Abelars were expected at the hearing to call for testimony "any and all of their nonretained experts" listed in their March 2021 expert witness designation. The court also warned that it might dismiss the case if the Abelars failed to appear or did not present witnesses at, or otherwise came unprepared for, the 402 hearing, and it set for the same date a hearing on an order to show cause why it should not dismiss the case. It further reset the final status conference and the jury trial for January 2022.

On the day before the 402 hearing in January, the Abelars filed an ex parte application to continue or stay the trial. The next day, the court granted the application in part and continued to February and March the 402 hearing, the hearing on the order to show cause, the final status conference, and the trial. Those proceedings were subsequently continued once more, again at the Abelars' request in an ex parte application filed the day before the 402 hearing, to March and April 2022.

In the meanwhile, the trial court ordered the Abelars to file and serve a list of their "non-retained, designated treating expert witnesses" they intended to call at the 402 hearing (the 402 list). The Abelars filed their 402 list, which was comprised of 13 witnesses, including both of the Abelars, on January 28, 2022.

11

## VII. *Events Leading to the Abelars' Withdrawal of Their 402 List, and the Defendants' Motion for Nonsuit*

Dr. Anand and Dr. Hakimisefat, with Providence, Simi, and Adventist joining, moved for section 128.7 sanctions against the Abelars and their counsel based in part on the Abelars' 402 list. Defendants argued the Abelars had not identified several of the witnesses on that list in their March 2021 expert witness designation, and there was no evidence that the Abelars had contacted any of their 402 list witnesses. Defendants also submitted, or referred the court to previously submitted, declarations of two witnesses who averred they had not been contacted by the Abelars' counsel about testifying at trial and had no intention of offering an opinion on standard of care or causation adverse to any of the defendants remaining in the action.

On March 2, 2022, the trial court denied without prejudice the motion for section 128.7 sanctions. The court stated that service of a section 128.7 sanctions request triggered a 21-day safe harbor period, and the motion could not be filed until that period expired. On its own motion, however, the court issued an order to show cause why it should not impose sanctions against the Abelars and/or their counsel under section 128.7—along with an order to show cause why it should not impose sanctions under section 128.5 and other statutory provisions—and set the matters for hearing on March 29.

The afternoon before the 402 hearing, the Abelars withdrew their 402 list. The next day, the trial court, observing the Abelars had withdrawn their list, granted its own motion to take the 402 hearing off calendar. Defendants then orally moved for nonsuit, arguing the Abelars could not prove their case

12

without expert witnesses.  The trial court deferred ruling on the nonsuit motion until April 1, 2022 and also continued to that same date the final status conference and the hearing on the orders to show cause as to imposition of sanctions under sections 128.5 and 128.7.

## VIII. *The Trial Court's Ruling on the Defendants' Motion for Nonsuit, the Judgments of Nonsuit, and the Order Imposing Sanctions Against the Abelars' Attorneys*

On April 1, 2022, the trial court granted a nonsuit as to all defendants, declined to impose section 128.7 sanctions, and took under submission whether—and, if so, in what amount—it would impose section 128.5 monetary sanctions against the Abelars' attorneys.

The trial court entered judgments of nonsuit in favor of Simi, Adventist, Dr. Anand, and Dr. Hakimisefat on April 11, 2022, and in favor of Dr. Trivedi on April 12, 2022.  On May 23, 2022, the court entered a judgment of nonsuit in favor of Providence.  Each judgment stated that costs would be determined upon the defendant's request.  Defendants served notices of entry of judgment in April and May 2022, with the earliest on April 29, 2022.  The Abelars filed a notice of appeal of the judgments on June 28, 2022.

On April 20, 2022, the court issued its final ruling imposing section 128.5 monetary sanctions against the Abelars' attorneys.  The court explained the sanctions were based on counsel's conduct with regard to the 402 hearing—including counsel's claim not to understand the court's order to produce expert witnesses to testify on December 7, 2021, their failure to inform defendants and the court of the intent to seek continuances "in a more timely fashion," and waiting until the afternoon before the

13

402 hearing to withdraw the 402 list—which the court said constituted " 'actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay' " within the meaning of section 128.5, subdivision (a). Based on the number of hours unnecessarily expended by defense counsel as a result of the Abelars' counsel's conduct, the court imposed sanctions in the total amount of $11,425, as follows: $3,750 to Dr. Anand and Dr. Hakimisefat or their counsel; $4,750 to Simi or its counsel; and $2,925 to Providence or its counsel.

IX. ***Defendants' Memoranda of Costs, the Abelars' Motions To Tax Costs, and the Trial Court's Order Denying in Part the Motions To Tax Costs***

Defendants filed costs memoranda, which included claims for section 998 expert witness fees. The Abelars moved to tax each defendant's costs, arguing that defendants were not entitled to any costs and challenging specific cost items, including expert witness fees.

On July 22, 2022, four weeks after the Abelars filed their last motion to tax costs and after having heard the arguments of counsel that same day, the trial court issued an order granting in part and denying in part the Abelars' motions to tax costs, ultimately awarding most of the costs sought by defendants.

## DISCUSSION

The Abelars contend the trial court abused its discretion or otherwise committed reversible error by (1) denying in part their motions to tax costs, including costs in the form of expert witness fees under section 998; (2) imposing section 128.5 sanctions; (3) excluding Dr. Rand-Luby from testifying at trial; and

14

(4) entering judgments of nonsuit.[6]  We dismiss their appeal as to some of the issues and reject their remaining contentions.

**I.    *We Lack Jurisdiction To Review the Postjudgment Order Awarding Expert Fees Under Section 998***

The Abelars challenge the order denying in part their motions to tax costs, asserting that the trial court should have struck defendants' memoranda of costs in their entirety or, alternatively, struck defendants' section 998 expert witness fees and other specified cost items.  We dismiss for lack of jurisdiction the Abelars' purported appeal of that order to the extent it awarded expert witness fees under section 998.

California Rules of Court, rule 8.100(a)(1)[7] requires that, "[t]o appeal from a superior court judgment or an appealable order of a superior court, . . . an appellant must serve and file a notice of appeal in that superior court."  " ' "[W]here several judgments and/or orders occurring close in time are separately appealable (e.g., judgment and order awarding attorney fees), each appealable judgment and order must be expressly specified—in either a single notice of appeal or multiple notices of appeal—in order to be reviewable on appeal." ' "  (*Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 173 (*Filbin*).)  A postjudgment order denying a motion to tax costs is appealable.  (See, e.g., *Norman I. Krug Real Estate Investments, Inc. v.*

---

[6]    On July 12, 2024, we requested supplemental briefing on whether the Abelars' notice of appeal from the judgments also embraced the sanctions and costs awards.  The parties filed responses in August 2024, which we have reviewed.

[7]    All subsequent undesignated references to a rule or rules are to the California Rules of Court.

*Praszker* (1990) 220 Cal.App.3d 35, 45–46 (*Krug*); see also *LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Association* (2023) 94 Cal.App.5th 1050, 1081.)

The Abelars' notice of appeal identified only the judgments of nonsuit, which were entered in April and May 2022. The notice of appeal did *not* specify the July 2022 postjudgment order on the Abelars' motion to tax costs, and the Abelars did not file a separate notice of appeal from that order. We thus requested supplemental briefing regarding whether we lacked jurisdiction over, and must thus dismiss, the Abelars' purported appeal of the order. (See, e.g., *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 1007–1008 [dismissing for lack of jurisdiction the purported appeal of a postjudgment order awarding fees and costs where notice of appeal only identified the judgment]; *Krug, supra,* 220 Cal.App.3d at p. 46 [where the notice of appeal was from the judgment and not a postjudgment order denying a motion to tax costs, Court of Appeal could not "construe the notice of appeal as applying to the [postjudgment] order under the rule of liberal construction"]; see also Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2023) ¶ 3:119.2 ["if appellant wishes to challenge an appealable postjudgment order that is rendered *after* appellant files a notice of appeal from the judgment, appellant must file a *separate notice of appeal* from the postjudgment order"].)

Relying on *Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993 (*Grant*), the Abelars in their supplemental brief argue that a separate notice of appeal was not required because the judgments awarded costs. (See *id.* at p. 998 ["when a judgment awards costs and fees to a prevailing party and provides for the later determination of the amounts, the notice of appeal subsumes any

16

later order setting the amounts of the award"].)  Here, each judgment stated that costs were "to be determined upon request by Defendant."  Nevertheless, although the judgments may reasonably be construed to mean that the prevailing party defendants were entitled to costs, with the amounts to be determined upon the defendants' request,[8] they did not address whether defendants were entitled to expert fees under section 998.

It is well-established that an appeal from a judgment does not encompass a postjudgment order awarding section 998 expert witness fees.  (See *Fish v. Guevara* (1993) 12 Cal.App.4th 142, 148; accord, *Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1317.)  As the Court of Appeal in *Fish* explained, "*Grant* held only that a costs award which is incidental to the judgment can be challenged on an appeal from the judgment. . . .  An award of expert witness fees pursuant to section 998 is not incidental to the judgment but is instead a separately litigated issue. [Citation.]  Prevailing parties do not recover their expert witness fees as a matter of right. . . .  Because expert witness fees are not incidental to the judgment, the propriety of a postjudgment award of expert witness fees cannot be reviewed on an appeal from the judgment." (*Fish*, at p. 148.)  Accordingly, because the Abelars' notice of appeal only identified the judgments, we

---

[8]     The parties are in agreement that the Abelars' notice of appeal from the judgments embraced the court's determination of costs to the prevailing parties other than those awarded under section 998, and this court thus has jurisdiction to evaluate the propriety of those cost awards.  (See *Grant, supra*, 2 Cal.App.4th at p. 998.)

17

dismiss the Abelars' purported appeal from the costs order to the extent it awarded expert witness fees under section 998.

## II. *The Abelars Fail To Establish That the Order Denying in Part Their Motions To Tax the Other Costs Must Be Reversed*

The Abelars challenge the order denying in part their motions to tax costs on a variety of grounds. Other than their contentions as to the section 998 expert fees, which we lack jurisdiction to consider for the reasons explained, we address each ground in turn.

### A. *Governing law and standard of review*

As pertinent here, section 1032 generally provides that "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b).) "Allowable costs shall be reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation" and "shall be reasonable in amount." (§ 1033.5, subd. (c)(2) & (3).) Section 1033.5, subdivision (a) provides a list of items that are allowable as costs to a prevailing party under section 1032. Subdivision (b) of section 1033.5 lists items that are generally not allowable as costs. Section 1033.5, subdivision (c)(4) provides, "Items not mentioned in this section and items assessed upon application may be allowed or denied in the court's discretion."

" ' "The standard of review on issues of attorney's fees and costs is abuse of discretion." ' " (*Coastline JX Holdings LLC v. Bennett* (2022) 80 Cal.App.5th 985, 1013; see *Naser v. Lakeridge Athletic Club* (2014) 227 Cal.App.4th 571, 576 (*Naser*) [" '[w]hether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and its decision is reviewed for abuse of discretion' "].) "We similarly

18

review the denial of a motion to tax costs for abuse of discretion." (*Coastline JX Holdings*, at p. 1013.)

"The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, internal fns. omitted (*Haraguchi*).) "In determining whether there has been [an abuse of discretion], we cannot reweigh evidence or pass upon witness credibility. The trial court is the sole arbiter of such conflicts." (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1420.)

### B. *Mail, rather than electronic, service of the three doctors' memoranda of costs*

The Abelars contend the trial court abused its discretion in failing to strike the three doctors' memoranda of costs in their entirety because those doctors had served their costs memoranda by mail and not electronically, as required under rule 2.251(c)(3).[9]

_____

[9] Rule 2.251(c)(3) provides, "Except when personal service is otherwise required by statute or rule, a party or other person that is required to file documents electronically in an action must also serve documents and accept service of documents electronically from all other parties or persons, unless: [¶] (A) The court orders otherwise, or [¶] (B) The action includes parties or persons that are not required to file or serve documents electronically, including self-represented parties or other self-represented persons; those parties or other persons are to be served by non-electronic methods unless they affirmatively consent to electronic service."

As the defendants point out, and the Abelars do not dispute, the Abelars timely filed their motions to tax costs, all of which were filed at least four weeks prior to the July 22, 2022 hearing on the cost motions.  Furthermore, the Abelars appeared through counsel at that hearing.[10]  In response to defendants' argument that the Abelars thus forfeited any defects or irregularities in the service of the costs memoranda (see, e.g., *Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697 [" '[i]t is well settled that the appearance of a party at the hearing of a motion and his or her opposition to the motion on its merits is a waiver of any defects or irregularities in the notice of the motion' "]), the Abelars state that they "did not argue below, nor do they argue on appeal, that notice of any motion was defective."  Rather, citing rule 3.1700(a), which outlines the *timeline* (as opposed to the manner) for filing and serving a memorandum of costs and is silent as to an appropriate remedy for failing to comply therewith, the Abelars make the assertion, unsupported by any reference to case law or other authority, that because "service was invalid," "the memoranda of costs must have been stricken in their entirety." Ultimately, because they do not provide authority for this position, we reject their contention without further analysis.  (See *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799 (*Dietz*) [" '[a]n appellant must provide an argument and legal authority to support his contentions' "]; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["[t]he absence of cogent

---

**10**     The record does not indicate that the Abelars requested a continuance or otherwise sought additional time to prepare their motions to tax costs as a result of the three doctors' election to serve their memoranda of costs by mail.

legal argument or citation to authority allows this court to treat the contentions as waived"]; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)

Moreover, the Abelars fail to demonstrate how they were prejudiced by any error of the trial court in determining that mail service of the doctors' cost memoranda was proper. Although they claim prejudice because the trial court's failure to strike the memoranda of costs led to its awarding costs against them, they conflate the obvious prejudice of having substantial costs awarded against them with any actual prejudice that was solely attributable to the doctors' election to serve their memoranda by mail as opposed to electronically. The Abelars have thus failed to satisfy their burden of establishing prejudicial error on appeal. (See, e.g., *Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1289 [to obtain a reversal based on a procedural defect, "the appellant must demonstrate . . . that he or she was *prejudiced*"].)

C.   *Not striking the costs memoranda in their entirety*

The Abelars assert the trial court erred by refusing to strike the costs memoranda of Dr. Anand, Dr. Hakimisefat, Providence, Simi and Adventist in their entirety. As we understand the Abelars' argument, the Abelars asked the trial court to strike Dr. Anand's and Dr. Hakimisefat's cost memoranda because the two doctors rounded up their claimed costs amounts to whole numbers, which the Abelars contend was

21

thus improper.[11]  They also asked the court to strike Providence, Simi, and Adventist's cost memoranda for claiming motion filing fees that had previously been awarded to those defendants as sanctions and had already been paid by the Abelars.[12]  Because of these inaccuracies, the Abelars contend defense counsel "could not in good faith verify that 'the items of cost are correct,' " as required by rule 3.1700.  That rule provides in part, "The memorandum of costs must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case."  (Rule 3.1700(a)(1).)[13]

Here, the defendants' cost memoranda were verified, and the trial court expressly found no bad faith by the defendants.  At the hearing on the motions to tax costs, the court explained that it did not regard the rounding-up "as taking away from the

_____

[11]    The Abelars acknowledge that the trial court "tax[ed] $5 from Anand['s] and Hakimisefat['s] costs for the rounding."

[12]    The trial court taxed Simi and Adventist's joint cost memorandum by an amount in excess of $2,500, including for "filing fees [that] were previously reimbursed by [the Abelars]."  Similarly, after Providence expressed its willingness to reduce costs to account for motion filing fees the Abelars had already paid as sanctions, the court taxed various amounts from Providence's cost memorandum, including an amount "based upon the uncontested argument of [the Abelars] in their motion to tax."

[13]    The Abelars erroneously cite to rule 3.1700(b); however, the language upon which they rely appears in rule 3.1700(a).

22

overall credibility . . . of the Anand and Hakimisefat cost bills." It also stated that it found the inclusion of amounts for already-paid filing fees was the result of unintentional error. Rather than strike the cost memoranda in their entirety, the trial court, explaining that the Abelars "cited no authority for their contention that all the cost bills here should be stricken in their entirety," taxed amounts to account for any inaccuracies it had found.

The Abelars provide no authority which would permit us to depart from the traditional deference afforded to a trial court's credibility determinations on the issue of bad faith (see, e.g., *In re S.G.* (2021) 71 Cal.App.5th 654, 672 [stating, where trial court's findings included that the mother acted in bad faith, that "[i]t is not our function to second-guess such credibility determinations or weighing of the evidence"]; *People v. Fultz* (2021) 69 Cal.App.5th 395, 429; *Llamas v. Diaz* (1990) 218 Cal.App.3d 1043, 1048), nor do they cite any authority establishing that the trial court was required to strike the defendants' cost memoranda in their entirety rather than simply deducting any improper amounts. We thus reject their argument without further discussion. (See, e.g, *Dietz*, *supra*, 177 Cal.App.4th at p. 799.)

### D. *Filing and motion fees*

The Abelars argue the trial court abused its discretion when it awarded filing fees to defendants. They assert in a conclusory fashion that Providence, Simi, and Adventist claimed filing fees that exceeded what the court charged, that Providence, Simi, Adventist, and Dr. Trivedi claimed filing fees never charged by the court, and that the defendants claimed filing fees that were not reasonably necessary to the litigation. The Abelars, however, provide no further explanation in support of their

23

argument. For example, they fail to identify which of the filing fees claimed by Providence were allegedly improper and do not explain why those fees were not reasonably necessary.[14] As defendants point out, and we agree, the Abelars, by failing in their opening brief to develop their vague, cursory argument, have forfeited it. (See, e.g., *Picerne Construction Corp. v. Castellino Villas* (2016) 244 Cal.App.4th 1201, 1211 ["[w]e are not required to examine undeveloped claims"]; see also *Aviel v. Ng* (2008) 161 Cal.App.4th 809, 821 ["They attempt, in their reply brief, to develop the argument, but it is too late. We disregard issues not properly addressed in the appellant's opening brief"].)

The Abelars also contend the trial court abused its discretion by refusing to tax the costs claimed by Simi and Adventist related to the lodging of exhibits for a summary judgment motion by those defendants. In support of that contention, the Abelars provide a cite to the portion of the record containing Simi and Adventist's joint memorandum of costs in which, for the category "[f]iling and motion fees," Simi and Adventist claimed an amount relating to the "MSJ [l]odging of [e]xhibits" that occurred on January 7, 2020. However, the Abelars appear to ignore that Simi and Adventist's counsel submitted, in their opposition to the motion to tax costs, a declaration attaching documentation to support the claimed costs. Specifically, Simi and Adventist's attorney attached an invoice showing that all of the claimed fees were those charged by

---

[14] In addition, the court's July 22, 2022 order indicates it had taxed Providence's filing and motion fees in the amount of $523.60. The Abelars on appeal fail to show how the amount of Providence's filing fees taxed by the trial court was inadequate.

a third party vendor for services, including document preparation, in connection with the third party's filing or lodging of Simi and Adventist's summary judgment exhibits on January 7, 2020. Rather than demonstrate how some or all of those third party charges would not be recoverable under section 1033.5, the Abelars rely on the simple assertion on appeal, without specific factual or legal support, that *the court* does not charge for the lodging of exhibits. Accordingly, we conclude that the Abelars have failed to demonstrate that the trial court erred in refusing to tax Simi and Adventist's costs, such as the third party document preparation fee, incurred by those defendants in connection with the lodging of their summary judgment exhibits.

## E. *Investigation and photocopying costs associated with obtaining Dee Ann's medical records*

Section 1033.5, subdivision (b)(2) and (3) provides, "The following items are not allowable as costs, except when expressly authorized by law: [¶] . . . [¶] (2) Investigation expenses in preparing the case for trial. [¶] (3) Postage, telephone, and photocopying charges, except for exhibits." The Abelars contend the costs for the investigation and photocopying associated with obtaining Dee Ann's medical records are not allowable under section 1033.5, subdivision (b)(2) and (3), and the trial court thus erred by refusing to tax those costs. We reject their contention of trial court error.

As a preliminary matter, we observe that the defendants' cost memoranda and attached worksheets, all prepared on Judicial Council of California forms, do not expressly list any costs as "investigation" expenses, and the Abelars on appeal do not clearly explain which costs constitute any such expenses. Similarly, other than the cost for the copying of trial exhibit

25

notebooks listed under the category "[m]odels, enlargements, and photocopies of exhibits" on Providence's cost memorandum and attached worksheet—a photocopying cost that the trial court taxed in its entirety[15]—the defendants' cost memoranda do not expressly set forth any costs as "photocopying" charges.

Nevertheless, we also observe that the Abelars in the trial court argued the costs claimed by the defendants for deposition subpoenas for the production of Dee Ann's medical records constituted improper investigation and photocopying charges. This appears to be their same contention on appeal. The Abelars, however, provide no authority to support the contention that those costs are categorically precluded as investigation expenses under section 1033.5, subdivision (b)(2) and have thus forfeited it. (See, e.g., *In re Marriage of Falcone & Fyke, supra*, 164 Cal.App.4th at p. 830.)

As for the contention that the costs to subpoena[16] Dee Ann's medical records constituted unallowable photocopying

---

[15] Providence's cost memorandum listed the amount for "[m]odels, enlargements, and photocopies of exhibits" as $844.75 and the amount for court reporter fees as $1,578.45, but the attached worksheet had those amounts reversed. Providence subsequently clarified the $844.75 amount was for court reporter fees and $1,578.45 was for the photocopying of trial exhibit notebooks. The trial court taxed $1,578.45 in "exhibit costs" when it awarded costs to Providence.

[16] It should be noted that as to Simi and Adventist (which submitted a joint memorandum of costs and which the trial court appears to have treated as a single defendant for purposes of this issue), the court did tax $1,206.06 "for subpoenaing its [*sic*] own records." The court reasoned that, "[w]hile other subpoenas

26

charges for anything other than exhibits under section 1033.5, subdivision (b)(3), the Abelars fail to cite any relevant authority in support thereof.  Instead, the Abelars rely on *Austin v. Allstate Ins. Co.* (1993) 16 Cal.App.4th 1812 to argue that, since "only the photocopying charges for documents admitted into evidence as exhibits would be allowable" under section 1033.5, subdivision (b)(3) (*Austin*, at p. 1815, fn. 2), to be recoverable, costs associated with Dee Ann's medical records must involve exhibits that were admitted into evidence at trial.  *Austin,* however, involved a plaintiff who sought to confirm an arbitration award against her insurer in the trial court.  The trial court, citing sections 1293.2 and 1284.2, which outline what costs may be recoverable after an *arbitration*, held that the plaintiff was only entitled to recover the costs of filing the motion to confirm the arbitration award. (*Austin,* at p. 1814.)  Since *Austin* involved the recovery of costs after arbitration which the court limited to the sole category of filing fees, and since the opinion makes no reference to costs related to the subpoenaing, as opposed to the photocopying, of medical records, *Austin* is inapposite.  To the contrary, we are aware of authority indicating the costs to subpoena records do not constitute unallowable section 1033.5, subdivision (b)(3) photocopying charges.  (See *Naser*, *supra*, 227 Cal.App.4th at pp. 576–578 [affirming trial court's order denying motion to tax costs despite appellant's argument that the costs to subpoena medical records constituted

issued by this Defendant, and the other Defendants for medical records were reasonable and necessary, the Court is not convinced that a party must subpoena its own records to assure their admissibility at [t]rial."

27

unallowable photocopying charges under §1033.5, subd. (b)(3)]; see also *Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 668 [concluding that the costs for photocopies of exhibits "prepared for, but ultimately not used at, trial" may be recoverable "in the trial court's discretion" under § 1033.5, subd. (c)(4)].) Accordingly, the Abelars failed to establish any error by the trial court for the awarding of costs related to Dee Ann's medical records.

III. ***We Dismiss the Appeal of the Order Imposing Section 128.5 Sanctions Against the Abelars' Attorneys***

As we have discussed, to be reviewable on appeal, each appealable judgment and order must be expressly identified in a notice of appeal. (*Filbin*, *supra*, 211 Cal.App.4th at p. 173.) Section 904.1 provides that an order or interlocutory judgment directing payment of monetary sanctions exceeding five thousand dollars ($5,000) is separately appealable. (§ 904.1, subd. (a)(11) [interlocutory judgment for sanctions in excess of $5,000], (12) [order for sanctions in excess of $5,000].) The June 28, 2022 notice of appeal, which identified only the April and May 2022 judgments, did not identify the April 20, 2022 order imposing $11,425 in section 128.5 monetary sanctions.

The Abelars contend that the order imposing sanctions was not separately appealable under section 904.1, subdivision (a)(11) and (12) because, although the total sanctions imposed here exceed $5,000, the amount payable to each defendant does not. We reject their contention.[17]

---

[17] Although the defendants concede that the sanction amounts payable to each defendant cannot be aggregated for

Section 904.1, subdivision (a)(12) provides for an appeal "[f]rom an order directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000)." The plain and unambiguous language of subdivision (a)(12)[18] does not require that the sanctions order, to be appealable, must direct payment of monetary sanctions exceeding $5,000 *to* a party or other person. Instead, the statute requires that the pertinent order direct payment exceeding $5,000 *by* a party or an attorney for a party. Although each affected defendant was to be paid a portion of the $11,425 in an amount that did not exceed $5,000, the sanctions order was nevertheless an order clearly and expressly directing payment by the Abelars' counsel of monetary sanctions in an amount exceeding $5,000. It arose from the trial court's issuance, on its own motion, of an order to show cause why sanctions should not be imposed for counsel's improper course of conduct related to the 402 hearing. The statutory requirements for

purposes of appealability, we are not bound by their concession. (See, e.g., *Desny v. Wilder* (1956) 46 Cal.2d 715, 729 ["[t]his court, of course, is not bound to accept concessions of parties as establishing the law applicable to a case"]; *Musgrove v. Silver* (2022) 82 Cal.App.5th 694, 704, fn. 4 ["[w]e are not bound by the parties' synthesis of the law . . . ."]; *Tun v. Wells Fargo Dealer Services, Inc.* (2016) 5 Cal.App.5th 309, 327 ["[q]uite simply, we are not bound to follow the meaning of a statute (or the law) conceded by a party"].)

[18]     A fundamental principle of statutory interpretation is that " '[t]he plain meaning controls if there is no ambiguity in the statutory language.' " (*Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1198.)

29

appealability of the sanctions order have been met under the circumstances present here.[19]  Because the notice of appeal did not specifically identify that sanctions order, we lack jurisdiction to review it.[20]

IV.  ***The Trial Court Did Not Abuse Its Discretion by Excluding Dr. Rand-Luby from Testifying at Trial***

Section 2023.030, subdivision (c), provides that a court may impose evidentiary sanctions against "any party engaging in the misuse of the discovery process."  Under section 2023.010, subdivisions (d) and (g), misuse of the discovery process includes

---

[19]  *Calhoun v. Vallejo City Unified School Dist.* (1993) 20 Cal.App.4th 39, disapproved on other grounds in *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 888, fn. 6 (*K.J.*), on which the Abelars rely, does not compel a different result.  *Calhoun* was decided on November 15, 1993 under section 904.1, former subdivision (k), which did not include an express reference to an appeal from a superior court "order" (as opposed to a judgment) directing payment of sanctions. (Stats. 1989, ch. 1416, § 25.)  As the Abelars themselves acknowledge, section 904.1 was amended, effective January 1, 1994, to expressly provide for appeal "[f]rom *an order* directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds" $5,000.  (Stats. 1993, ch. 456, § 12, italics added; Cal. Const., art. IV, § 8, subd. (c).)  The sanctions order here meets those amended requirements.  We thus need not address whether multiple sanction amounts may be aggregated to constitute a "judgment" meeting the appealability threshold.

[20]  Having so concluded, we need not consider whether the Abelars have standing to appeal a sanctions order imposed solely against their counsel, or whether we should construe the *Abelars'* notice of appeal to include their attorneys.  (See *K.J.*, *supra*, 8 Cal.5th 875.)

"[f]ailing to respond or to submit to an authorized method of discovery" or "[d]isobeying a court order to provide discovery." The court may impose evidentiary sanctions after a motion to compel has been made and granted and the party to be sanctioned has failed to comply with that order.  (§ 2025.450, subd. (h).)  The court must tailor "[d]iscovery sanctions . . . in order to remedy the offending party's discovery abuse," and the sanctions "should not give the aggrieved party more than what it is entitled to[ ] and should not be used to punish the offending party." (*Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1217.)

"We review the trial court's imposition of discovery sanctions for an abuse of discretion."  (*Sabetian v. Exxon Mobil Corp.* (2020) 57 Cal.App.5th 1054, 1084.)  "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review.  The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi*, *supra,* 43 Cal.4th at pp. 711–712, internal fns. omitted; see *Masimo Corp. v. The Vanderpool Law Firm, Inc.* (2024) 101 Cal.App.5th 902, 907 [in reviewing a discovery sanctions order for abuse of discretion, "we overturn such an order only for 'arbitrary, capricious, or whimsical action' " and uphold "[f]actual findings . . . if supported by substantial evidence"].)  " 'We view the entire record in the light most favorable to the court's ruling, and draw all reasonable inferences in support of it.' " (*Sabetian*, at p. 1084; see *Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 818 [under substantial evidence review, "[w]e must not review the evidence

to determine whether substantial evidence supports the losing party's version of the evidence. Instead, we must determine if there is any substantial evidence, contradicted or uncontradicted, to support the trial court's findings"].) " 'We also defer to the trial court's credibility determinations.' " (*Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43, 51.)

In the present case, the trial court did not abuse its discretion by concluding that the Abelars repeatedly misused the discovery process by refusing to produce Dr. Rand-Luby for a court-ordered deposition. As detailed above, after the trial court struck Dr. Rand-Luby's declaration as an evidentiary sanction and granted judgment in Dr. Mora's favor, the Abelars continued to resist producing the same expert—this time for deposition by the remaining defendants, ultimately requiring a motion to compel and another court order to produce this expert for deposition. The Abelars, however, yet again failed to obey the court's order requiring their expert's deposition. Such circumstances clearly satisfy the statutory prerequisites for imposing an evidentiary sanction.

Characterizing the evidentiary sanction as a terminating sanction, the Abelars contend the trial court erred in issuing the sanction because it neither made the necessary findings—that the Abelars willfully violated the court's orders and acted without substantial justification—nor imposed a less severe alternative before imposing a terminating sanction, as is required. We disagree. The Abelars are misguided because the trial court did not impose a terminating sanction. As we explained in a prior appeal from the judgment in this case involving Dr. Mora, *Abelar v. Mora, supra,* B311451, a terminating sanction consists of the following: "(1) An order striking out the pleadings or parts of the

32

pleadings of any party engaging in the misuse of the discovery process. [¶] (2) An order staying further proceedings by that party until an order for discovery is obeyed. [¶] (3) An order dismissing the action, or any part of the action, of that party. [¶] (4) An order rendering a judgment by default against that party." (§ 2023.030, subd. (d).) The record is clear that the court imposed an evidentiary sanction, not a terminating sanction. The court did not, for example, strike the Abelars' complaint or dismiss their action against the remaining defendants. Instead, the court issued an evidentiary sanction excluding Dr. Rand-Luby from testifying at trial—relief tailored to specifically address the Abelars' repeated refusals to produce her for a court-ordered deposition. Indeed, at the time the court imposed that sanction, the Abelars successfully argued against dismissing the case based on their claim that they could call as trial witnesses several treating physicians whom they had previously designated as nonretained experts. That the sanction later resulted in the substantial impairment of the Abelars' ability to oppose the defendants' subsequent motion for nonsuit does not render the court's decision an abuse of discretion. (See *Juarez v. Boys Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 390, disapproved on an unrelated point by *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 222, fn. 9 [absent "unusual extenuating circumstances," "the appropriate sanction when a party repeatedly and willfully fails to provide certain evidence to the opposing party as required by the discovery rules is preclusion of that evidence from the trial—even if such a sanction proves determinative in terminating plaintiff's case"].)

Relying on the part of the August 3, 2021 minute order stating that the Abelars had presented no evidence of Dr. Rand-

Luby's unavailability, the Abelars contend the trial court erred because they had submitted evidence that Dr. Rand-Luby had been called into work for emergency surgeries and could not be present at her July 20, 2021 deposition. The Abelars, however, are misguided in their conclusion.

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) The Abelars fail to overcome the presumption of the correctness of the trial court's order or judgment; they do not establish that the trial court necessarily erred when it determined there was no evidence of Dr. Rand-Luby's unavailability for her deposition. The Abelars point to their counsel's declaration, which attached an email from another attorney at their counsel's law office, but the trial court could have reasonably concluded that the evidence was inadmissible because the Abelars' attorneys could have lacked personal knowledge of the doctor's surgery schedule. (See Evid. Code, § 702.) Although the Abelars' counsel averred that Dr. Rand-Luby had notified the law office of the doctor's unavailability for deposition, the trial court could have determined that Dr. Rand-Luby's statements to the law office constituted inadmissible hearsay. (See *id.*, § 1200.) Significantly, the Abelars did not submit a declaration from Dr. Rand-Luby regarding her unavailability for deposition. In sum, the Abelars fail to establish that the trial court must have erred in concluding there was no evidence of Dr. Rand-Luby's unavailability for her deposition.

34

Finally, the Abelars assert the trial court abused its discretion in excluding Dr. Rand-Luby because the defendants failed to meet and confer before moving for sanctions under section 2023.010 and contend that failure was fatal to their motion. The Abelars, however, cite no authority requiring a party to meet and confer before moving for sanctions for a misuse of the discovery process under section 2023.010 when the misuse is a violation of a court order. Indeed, we are aware of authority to the contrary. (See *Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 411; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2024) ¶ 8:2318 ["[a] good faith 'meet and confer' is *not* required by statute on a motion for sanctions for disobedience to a court order"].) In any event, the record shows the defendants met and conferred before moving to exclude Dr. Rand-Luby from testifying at trial.

V.    ***The Abelars Fail To Establish That the Judgments of Nonsuit Must Be Reversed***

A.    ***The Abelars forfeited their argument as to the res ipsa loquitur and common knowledge doctrines***

To succeed on a cause of action for medical negligence, a plaintiff must prove "(1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305.) With respect to the standard of care for medical professionals, " ' "a physician or surgeon [must] have the degree of learning and skill ordinarily possessed by

35

practitioners of the medical profession in the same locality and [must] exercise ordinary care in applying such learning and skill to the treatment of [the] patient." ' " (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 998, italics omitted (*Flowers*); see *Brown v. Colm* (1974) 11 Cal.3d 639, 642–643 ["a doctor is required to apply that degree of skill, knowledge and care ordinarily exercised by other members of his profession under similar circumstances"]; *McAlpine v. Norman* (2020) 51 Cal.App.5th 933, 938 [same].)

"As a general rule, the testimony of an expert witness is required in every professional negligence case to establish the applicable standard of care, whether that standard was met or breached by the defendant, and whether any negligence by the defendant caused the plaintiff's damages." (*Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1542; see *Flowers*, *supra*, 8 Cal.4th at p. 1001 [" ' "[t]he standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts . . . ." ' "]; *Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 153 [" '[w]henever the plaintiff claims negligence in the medical context, the plaintiff must present evidence from an expert that the defendant breached his or her duty to the plaintiff and that the breach caused the injury to the plaintiff' "].) "A narrow exception to this rule exists where ' " 'the conduct required by the particular circumstances is within the common knowledge of the layman.' [Citations.]" ' [Citation.] This exception is, however, a limited one. It . . . applies only when the plaintiff can invoke the doctrine of res ipsa loquitur[,]" "i.e., when a layperson "is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as

36

ordinarily would have followed if due care had been exercised.' " (*Scott*, at pp. 1542–1543; *Flowers*, at p. 1001.)

In granting defendants' motion for nonsuit, the trial court explained in part, " '[T]he testimony of an expert witness(es) is required in every professional negligence case to establish the applicable standard(s) of care, whether that standard of care was met or breached by the defendant(s), and whether any such breach(es) caused the plaintiffs' damages.' [Citations.] [¶] There is no question that [the Abelars] must present expert testimony at trial in this case on the issues described immediately hereinabove in order to prove the allegations in their operative Complaint."

The Abelars contend the judgments of nonsuit must be reversed because expert testimony is unnecessary to support their professional negligence case. Specifically, citing both the common knowledge doctrine and the principle of res ipsa loquitur, they argue that medical expert testimony is unnecessary where circumstances indicate the injury was likely the result of a simple negligent act, as opposed to treatment requiring medical judgment beyond a layperson's common knowledge. They assert it is within the common knowledge of a layperson that the defendants' failure to diagnose Dee Ann's infection constituted a breach of the standard of care.

The Abelars, however, failed to raise their argument in the trial court in opposition to defendants' motion for nonsuit. Accordingly, it is forfeited. (See, e.g., *Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [" 'issues not raised in the trial court cannot be raised for the first time on appeal' "]; *Auburn Woods I Homeowners Assn. v. State Farm General Ins. Co.* (2020) 56 Cal.App.5th 717, 727 ["[w]e agree with

37

[respondents] that the claim is forfeited because [appellants] did not raise the argument in the trial court"].)

The Abelars argue they did not forfeit their argument because, as shown by its ruling, the trial court concluded that "res ipsa loquitur does not apply in this case." In its ruling, however, the court stated that the Abelars "have neither claimed nor argued the application of the doctrine of res ipsa loquitor in this case" before the court concluded that res ipsa loquitur did not apply. Moreover, the court had first issued a tentative ruling with that same statement and conclusion, and invited the Abelars' counsel at the hearing on defendants' nonsuit motion to address its tentative ruling. The Abelars' counsel failed to do so as to the res ipsa loquitur and common knowledge doctrines. Accordingly, the Abelars' argument on those doctrines has been forfeited.

**B.** ***The Abelars fail to establish the trial court prejudicially erred by granting the defendants' motion for nonsuit***

Section 581c provides in part, "Only after, and not before, the plaintiff has completed his or her opening statement, or after the presentation of his or her evidence in a trial by jury, the defendant, without waiving his or her right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit." (§ 581c, subd. (a); see *Lingenfelter v. County of Fresno* (2007) 154 Cal.App.4th 198, 208 [the court "has the authority to grant a motion for nonsuit after the plaintiff's opening statement"].) Relying on "the record in this case," which included the exclusion by the court or withdrawal by the Abelars of "all of [their] expert witnesses as to standard of care, breach or causation," as well as the Abelars having never claimed that res

38

ipsa loquitur applied, the trial court concluded that "a nonsuit pursuant to [section 581c] is procedurally appropriate at this time, as the 402 or offer of proof hearing . . . was tantamount to an opening statement for purposes of a nonsuit motion."

The Abelars contend the judgments of nonsuit must be reversed as improper because they neither completed their opening statement nor presented any evidence at trial. They assert the trial court erred by construing the 402 hearing as an opening statement for purposes of the nonsuit motion. We disagree that the judgments should be reversed.

A judgment shall not be set aside for a procedural error unless the error has resulted in a "miscarriage of justice." (Cal. Const., art. VI, § 13; see *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 [there is a "miscarriage of justice" only when " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error' "]; *Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 749 (*Atkinson*) [to constitute reversible error, the trial court's granting nonsuit on its own motion before appellant's opening statement must result in prejudice to the appellant, that is, a miscarriage of justice].) "[T]he burden is on [the appellant] to demonstrate error—and also 'prejudice arising from' that error." (*Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1006.)

Even if the trial court erred by construing the 402 hearing as an opening statement for purposes of the nonsuit motion, the Abelars were required, but fail, to show how they were prejudiced by the error. They do not show it is reasonably probable they would have obtained a more favorable outcome if the defendants had moved for nonsuit after an opening statement by the Abelars at trial (without considering the 402 hearing an opening

39

statement).  Moreover, because the Abelars did not have any trial witnesses who could opine on the standard of care, the Abelars manifestly could not have prevailed at trial.  Because the Abelars thus fail to meet their burden of demonstrating prejudice, we will not reverse the judgments of nonsuit.  (See, e.g., *Michel v. Moore & Associates, Inc.* (2007) 156 Cal.App.4th 756, 760, fn. 4 ["[i]t is . . . not reversible error to grant [a motion for nonsuit] prematurely if the motion is otherwise well taken"]; *Atkinson*, *supra*, 109 Cal.App.4th at p. 749 [analyzing if appellant "would have survived a motion for nonsuit after an opening statement" in determining whether to reverse trial court error in granting nonsuit before appellant's opening statement].)

## DISPOSITION

The purported appeals of the trial court's orders awarding expert witness fees to the defendants under section 998 and imposing section 128.5 sanctions against the Abelars' attorneys of record are dismissed.  The judgments are affirmed.  Defendants are to recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

BERSHON, J.[*]

We concur:

EDMON, P. J.

EGERTON, J.

---

[*]    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.