[No. A138353. First Dist., Div. Five. June 27, 2014.]

ZAHRA NASER, Plaintiff and Appellant, v.
LAKERIDGE ATHLETIC CLUB, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.A.

572

COUNSEL

Law Office of Michael R. Loewen, Michael R. Loewen and Noah Freeman Schwinghammer for Plaintiff and Appellant.

Ericksen Arbuthnot, Joseph J. Minioza, Jason W. Mauck and Gregory A. Mase for Defendant and Respondent.

OPINION

BRUINIERS, J.—Appellant Zahra Naser slipped and fell in the locker room of the Lakeridge Athletic Club (Lakeridge) in El Sobrante, California. She filed suit seeking damages for resulting personal injuries. The trial court granted summary judgment for Lakeridge on the basis that Naser had assumed the risk of harm in use of the health club facilities and that her contract with Lakeridge included a valid release of liability. Naser appeals from the judgment against her, contending the liability waiver in her membership agreement is unenforceable under statutes governing contracts for health studio services (Civ. Code, § 1812.80 et seq.; hereafter Health Studio Act), and the agreement did not clearly and unambiguously relieve Lakeridge of negligence liability for injuries not arising directly from exercise activities. She also challenges the trial court's denial of her motion to tax costs awarded to Lakeridge. We affirm the grant of summary judgment in the unpublished portion of this opinion. In the published portion of this opinion we affirm denial of Naser's motion to tax costs.

## I. BACKGROUND

Except as noted, the following facts were undisputed for purposes of the summary judgment proceeding. In February 2004, Naser signed a membership agreement (Agreement) with Lakeridge and became a member of the club. The Agreement stated on its first page in bold print: "The Member is fully aware of the potential dangers incidental in engaging in the activity and instruction of exercise activities (such as weight lifting, bodybuilding, aerobic dancing, and any other exercise activity). In consideration of permitting this member to join this Club or to participate in exercise activity and/or

instruction at these premises (including the entire indoor area and outdoor parking area), the Member agrees to voluntarily assume all liability and to indemnify [Lakeridge] for any death, injury, or damage suffered by any person, including the Member, arising out of the Member's activities at [Lakeridge] even if death, injury, or damage is caused by [Lakeridge's] own passive or active negligence." (Boldface omitted.) Immediately below this release of liability (Release) and just above Naser's signature on the first page of the form, the Agreement stated in bold print: "The Member acknowledges that he or she has read and understands the entire Agreement consisting of two (2) pages including this page, and the Club Rules and Regulations. The Member is fully aware of the legal consequences of signing this Agreement. This Agreement supercedes [sic] any and all previous Agreements." (Boldface omitted.) Naser signed the Agreement on February 24, 2004.

On January 26, 2009, Naser went to the club, changed in the locker room, swam in the pool, and spent time in the sauna. "After she got out of the sauna, [she] walked back to the locker room, still wearing her flip flop shoes, to get her bag and clothes out of her locker. [¶] . . . [She] grabbed her bag and turned to put it on the bench behind her. She took one step into a puddle of water and her left foot came off the protective floor mat, and her knee hit the floor.[1] [¶] . . . At the time of the accident, the locker room was divided into almost two parts by three benches, with mats adjacent to the lockers but no matting next to the benches."

Naser's suit pled a single cause of action for personal injury. She alleged that Lakeridge negligently supervised, maintained, repaired, cleaned, controlled and operated the premises. Lakeridge moved for summary judgment on the ground that by signing the Agreement Naser agreed to voluntarily assume all liability for any injury she might suffer as a result of her activities at the club, which included her 2009 slip and fall. In opposition, Naser argued the Release was not enforceable because the Agreement violated the Health Studio Act, specifically Civil Code sections 1812.81, 1812.84, and 1812.91. Even if the Agreement did not violate the Health Studio Act, she argued the Release did not apply to the incident because her injury was not exercise related and the Release was also void for ambiguity.

The trial court granted the summary judgment motion, finding the Agreement did not violate the Health Studio Act and the Release was enforceable. The Release applied to Naser's accident because her slip and fall on a wet locker room floor was "the type of typical hazard known to relate to the use of a health club facility for exercise." The court entered judgment for Lakeridge, and denied Naser's subsequent motion to tax Lakeridge's costs,

---

[1] Lakeridge argued Naser's testimony was unclear as to the manner of her fall.

which included $895 in filing fees, a $150 jury fee, and $8,602 in deposition costs. Naser appeals both the judgment and the cost award.

## II. DISCUSSION

### A. *Motion for Summary Judgment**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### B. *Motion to Tax Costs*

After the trial court entered judgment, Lakeridge filed a $9,647 memorandum of costs. It sought filing and motion fees (which Naser does not contest), a $150 jury fee, and $8,602 in deposition costs. The deposition costs included the direct costs of taking three depositions, for a total of $1,604, to which Naser did not object. Naser moved to tax costs, arguing the jury fee was unwarranted as there was no jury trial in the case, and the bulk ($6,998) of the claimed deposition costs should have been disallowed as costs of photocopying her medical records. Lakeridge opposed the motion, arguing the jury fee was a reasonable and necessary cost of litigation, and the contested deposition costs were allowable as costs of "serving and processing *deposition subpoenas*" for production of business records in lieu of a personal appearance by the custodian of records, pursuant to Code of Civil Procedure sections 2020.020 and 2020.410.[9] Even if these deposition costs were not automatically allowable under the cost statute, Lakeridge argued, the court should allow them in its discretion as reasonable and necessary to the conduct of the litigation and as reasonable in amount. The court denied Naser's motion to tax and awarded Lakeridge the requested amount.

■ Generally, a prevailing party is "entitled as a matter of right to recover costs." (§ 1032, subd. (b).) It is not disputed that Lakeridge was the prevailing party below. (See *id.*, subd. (a)(4) [" '[p]revailing party' includes . . . a defendant as against those plaintiffs who do not recover any relief against that defendant."].) ■ As relevant here, allowable costs include "(1) Filing, motion, and jury fees. [¶] . . . [¶] (3) Taking, video recording, and transcribing necessary depositions including . . . travel expenses to attend depositions. [¶] (4) Service of process . . . ." (§ 1033.5, subd. (a).) Costs that are not generally allowable include "[p]ostage, telephone, and photocopying charges, except for exhibits." (§ 1033.5, subd. (b)(3).) Section 1033.5 further provides that "[a]llowable costs shall be reasonably necessary to the conduct of the litigation rather than merely

---

*See footnote, *ante*, page 571.

[9] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

convenient or beneficial to its preparation . . . [¶] . . . [and] shall be reasonable in amount. [¶] . . . Items not mentioned in this section and items assessed upon application may be allowed or denied ,in the court's discretion." (*Id.*, subd. (c)(2)–(4).)

"Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and its decision is reviewed for abuse of discretion. [Citation.] However, because the right to costs is governed strictly by statute [citation] a court has no discretion to award costs not statutorily authorized. [Citations.]" (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774 [23 Cal.Rptr.2d 810].) Whether a cost is statutorily authorized is a question of law we review de novo. (*Baker-Hoey v. Lockheed Martin Corp.* (2003) 111 Cal.App.4th 592, 596 [3 Cal.Rptr.3d 593].)

### 1. The Jury Fee

We affirm the court's allowance of the $150 jury fee, as provided under section 1033.5, subdivision (a)(1). Naser argues the fee was not reasonable and necessary to the conduct of the litigation because a jury trial never took place. However, Lakeridge was required to pay the fee in order to preserve its right to a jury trial. A party's right to a jury trial is waived unless the party pays a nonrefundable $150 jury fee on or before the date scheduled for the initial case management conference in the action. (§ 631, subds. (b), (c), (f)(5).) The date of the initial case management conference in this action was in June 2011. Summary judgment was not granted until February 2013. Lakeridge could not have known in June 2011 that a jury trial would be unnecessary. The fee was a reasonable litigation expense and was recoverable under section 1033.5, subdivision (a)(1).

### 2. Records Deposition Costs

Lakeridge claims the disputed deposition costs for "serving and processing" subpoenas pursuant to sections 2020.020 and 2020.410 were for copies of Naser's records from numerous health care providers and nonretained experts identified in her pretrial disclosures. Naser does not contend that the records were unnecessary to the litigation or that the costs were unreasonable, but only claims that these are unallowable photocopying costs under section 1033.5, subdivision (b)(3) and were unnecessary to the scope of the summary judgment motion.

The parties have not cited, and we cannot find, any direct authority on whether section 1033.5, subdivision (a)(3) applies to the costs of serving and processing deposition subpoenas for the production of business records without an in-person appearance of the custodian of records. However, the

statutory provision refers to the costs of "[t]aking, video recording, and transcribing necessary *depositions . . .* and travel expenses to attend depositions." (§ 1033.5, subd. (a)(3), italics added.)

■ The Civil Discovery Act (§ 2016.010 et seq.) specifies the methods for obtaining discovery within the state from "a person who is not a party to the action in which the discovery is sought: [¶] (1) An oral deposition under Chapter 9 (commencing with Section 2025.010). [¶] (2) A written deposition under Chapter 11 (commencing with Section 2028.010). [¶] (3) A *deposition* for production of business records and things under Article 4 (commencing with Section 2020.410) or Article 5 (commencing with Section 2020.510). [¶] (b) Except as provided in subdivision (a) of Section 2025.280, the process by which a nonparty is required to provide discovery is a *deposition* subpoena." (§ 2020.010, italics added; see § 2020.020, subd. (b) [authorizing issuance of a deposition subpoena for "production of business records for copying" pursuant to § 2020.410].) The deposition subpoena for business records directs a nonparty's "custodian" of records to deliver a copy of the requested documents to a "deposition officer" or to make the original documents available to the subpoenaing party for inspection and copying. (§§ 2020.410, subd. (c), 2020.430, subds. (a)–(e).) The Civil Discovery Act refers to the custodian of records as the "deponent." (§§ 2025.280, subd. (b), 2020.230, subd. (b)). "A deposition subpoena which seeks only business records simply allows a party to obtain these records without the formality of requiring the testimony of the custodian." (*California Shellfish Inc. v. United Shellfish Co.* (1997) 56 Cal.App.4th 16, 21 [64 Cal.Rptr.2d 797] (*Shellfish*).)

At least two courts have concluded that the Civil Discovery Act contemplates that discovery conducted by way of a business records subpoena is a "deposition." (*Unzipped Apparel, LLC v. Bader* (2007) 156 Cal.App.4th 123, 131 [67 Cal.Rptr.3d 111]; *Shellfish, supra,* 56 Cal.App.4th at p. 21.) The Second District Court of Appeal found that a motion to compel production of subpoenaed documents, required to be filed "no later than 60 days after the completion of the record of the deposition" (§ 2025.480, subd. (b)) applied to a motion filed after objections were filed in response to a business record deposition subpoena, "because a response to a business records subpoena, namely, objections, is a 'record of the deposition' " (*Unzipped Apparel, LLC v. Bader,* at p. 127). *Shellfish* involved the application of the 20-day "deposition hold," which precludes a plaintiff from serving a "deposition notice" until "20 days after the service of the summons on, or an appearance by, any defendant." (§ 2025.210, subd. (b).) Division One of this court found that in the context of the Civil Discovery Act "it is clear that a deposition subpoena seeking business records is included in the category of 'oral deposition' covered by [former] section 2025" and that the 20-day hold thus applied. (*Shellfish,* at p. 23.)

■ We agree that obtaining business records through a deposition subpoena is a "deposition" within the plain meaning of the Civil Discovery Act. Naser's medical records were clearly relevant to her personal injury claim, and Lakeridge was entitled to depose the custodian of records for each of Naser's health care providers and potential experts. Although the scope of the summary judgment motion was more narrow than the potential issues that might arise at trial, Lakeside was entitled to conduct discovery necessary to prepare for trial and to recover those costs after prevailing in the action. It would be anomalous to deny costs where Lakeridge utilized a more economical procedure.

## III. DISPOSITION

The judgment is affirmed. Naser shall bear Lakeridge's costs on appeal.

Jones, P. J., and Simons, J., concurred.