Filed 12/31/24  Slutske v. Gratton CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| JEFFREY SLUTSKE, | B325068 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC723488) |
| v. | |
| THERESA GRATTON, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Michael B. Harwin, Judge.  Affirmed as modified.

Workman Law & Litigation and Seth E. Workman, for Plaintiff and Appellant.

Horvitz & Levy, H. Thomas Watson, Andrew G. Spore; Tseng & Associates, Jennifer T. Tseng and Carmen R. Selame, for Defendant and Respondent.

# I.    INTRODUCTION

Plaintiff Jeffrey Slutske sued defendant Theresa Gratton for injuries he allegedly sustained in an automobile collision.  The jury found that defendant was negligent but that her negligence was not a substantial factor in causing plaintiff harm.  On appeal, plaintiff contends that the jury's verdict is not supported by the evidence and that the trial court erred when it granted a motion to quash a subpoena and denied his motion to tax costs.  We modify the judgment to reduce the costs award by $4,520.80.  As so modified, we affirm the judgment.

## II. BACKGROUND

A. *Relevant Facts[1]*

### 1. The Collision

On the evening of December 16, 2017, plaintiff and defendant were driving their respective cars near an outlet mall in Camarillo, in Ventura County. Defendant, who was driving between 10 to 15 miles an hour, struck plaintiff's car, causing impact between the front of defendant's car and the driver's side of plaintiff's car. Plaintiff, a deputy with the Los Angeles County Sheriff's Department, was 45-years old and had worked as a police officer since 1997.

The collision caused the airbags on plaintiff's car to deploy and plaintiff felt a jarring impact to his left side. Immediately after the collision, defendant, who was a licensed vocational nurse, got out of her car, approached plaintiff's car, and asked

---

[1] "We recite the facts in the manner most favorable to the judgment and resolve all conflicts and draw all inferences in favor of respondent[]. [Citation.] Conflicts in the evidence are noted only where pertinent to the issues on appeal. [Citation.]" (*Meister v. Mensinger* (2014) 230 Cal.App.4th 381, 387.)

Plaintiff moves to augment the record to include five additional photographs depicting the damage to his vehicle. Although these photographs were published to the jury at the time of trial, collectively, as plaintiff's exhibit no. 48, the record does not demonstrate that the exhibits were filed or lodged with the court. Augmentation of the record is permitted for "[a]ny document *filed* or *lodged* in the case in superior court[.]" (Cal. Rules of Court, rule 8.155(a)(1)(A), italics added.) Accordingly, plaintiff's motion to augment the record is denied.

3

plaintiff if he was alright.  Plaintiff acknowledged that he was okay.  Defendant then moved her car off the roadway, called 911, and returned to plaintiff to check on him.  Plaintiff again acknowledged that he was okay.

Plaintiff then exited his car on the passenger side because the driver's side door would not open.  He sat on the curb and took some deep breaths.  Neither defendant nor a third-party witness noticed any visible injuries on plaintiff.

Paramedics responded to the collision and attended to plaintiff.  Although plaintiff told the paramedics that he did not need medical care, he also reported feeling pain in his left side, his face, and his right wrist.  The paramedics observed that plaintiff's blood pressure was elevated and therefore recommended that he go to the hospital.

At the hospital, plaintiff experienced pain in his neck, shoulder, and right wrist.  An x-ray, sensation test, and neurological exam all showed that the wrist was normal.  A musculoskeletal exam indicated no swelling, deformity, or bruising.  Plaintiff was able to move his neck in all directions.

2.      Plaintiff's Subsequent Medical Treatment

Two days after the collision, plaintiff was examined by his primary care physician.  At that time, he had no muscle weakness or swelling to the wrist and experienced no sensory changes.  Plaintiff reported to his physician that he was feeling better.  But plaintiff began to experience headaches a couple of days later.

Plaintiff's attorneys referred him to a chiropractor, Dr. Ronald Maugeri, whom plaintiff visited two weeks after the

4

collision.  Plaintiff received treatment from Dr. Maugeri, which helped to alleviate the pain in his neck and back.  His headaches also improved.  Plaintiff, however, continued to feel pain in his wrist.

In August 2018, plaintiff, who continued to feel pain in his wrist, was examined by Dr. Bobby Dezfuli, a board-certified hand surgeon.  Dr. Dezfuli observed that plaintiff did not have swelling or loss of sensation in his wrist.  Dr. Dezfuli diagnosed plaintiff with De Quervain's tenosynovitis.[2]  An MRI exam revealed the existence of a small cyst on plaintiff's wrist.  Dr. Dezfuli discussed the option of surgery with plaintiff.

Dr. Dezfuli examined plaintiff again in November 2018.  At that time, he advised plaintiff that if his pain was caused by the cyst, surgery would not alleviate it.  Plaintiff decided to proceed with the surgery.  At no time during his treatment of plaintiff did Dr. Dezfuli form an opinion as to the cause of plaintiff's De Quervain's tenosynovitis, which can be brought on by trauma, age, or repetitive motions.

On January 11, 2019, Dr. Dezfuli performed a tendon release surgery on plaintiff's wrist.  Two months after the

---

[2]     Dr. Dezfuli explained that the condition is referred to as both De Quervain's tendonitis and De Quervain's tenosynovitis.  The terms are "interchangeable."  The term refers to "a painful condition affecting the tendons on the thumb side of the wrist." (Mayo Clinic <https://www.mayoclinic.org/diseases-conditions/de-quervain-tenosynovitis/symptoms-causes/syc-20371332> [as of Dec. 30, 2024], archived at <https://perma.cc/2UBH-RD2Y>.) Symptoms include pain or swelling near the base of the thumb, difficulty moving the thumb and wrist when grasping or pinching, and a "'sticking'" or "'stop-and-go' sensation in the thumb when moving it." (*Ibid*.)

5

surgery, an MRI of plaintiff's right wrist showed early signs of arthritis of the right thumb joint. Dr. Dezfuli believed that the surgery was a success.

Plaintiff, however, felt upset and defeated because, following the surgery, the pain in his wrist "didn't get any better." Plaintiff therefore consulted with Dr. Edwin Ashley, an orthopedic surgeon who specialized in the hand and upper extremity. Dr. Ashley also diagnosed plaintiff with De Quervain's tenosynovitis and performed a second surgery. Plaintiff, however, continued to experience pain in his right wrist.

B.    *Procedural History Before Trial*

1.    Complaint and Settlement Offers

On September 28, 2018, plaintiff filed, in the Los Angeles County Superior Court, a complaint alleging that he had been damaged by plaintiff's negligence.[3]

On November 14, 2018, pursuant to Code of Civil Procedure[4] section 998, defendant offered plaintiff $30,001 to settle the complaint. Plaintiff did not accept the offer.

On October 25, 2019, defendant's counsel sent plaintiff's counsel an e-mail that tendered defendant's insurance policy limit of $100,000. Plaintiff did not accept that offer.

---

[3]    Defendant moved to change the venue to Ventura County. The court denied the motion.

[4]    Further statutory references are to the Code of Civil Procedure.

6

On November 25, 2019, pursuant to section 998, defendant sent plaintiff an offer to settle the complaint for $100,000. Again, plaintiff did not accept the offer.

### 2. Trial Subpoena

On October 11, 2021, plaintiff's counsel issued a civil subpoena for Dr. Charles D. Rosen to appear as a witness at trial.[5] Dr. Rosen's counsel contacted plaintiff's counsel to inform him that plaintiff's subpoena did not include the appropriate fees to secure Dr. Rosen's trial presence.

On March 22, 2022, plaintiff's counsel issued another civil subpoena for Dr. Rosen's appearance at trial.

On March 30, 2022, Dr. Rosen filed an ex parte application for a protective order and to quash the subpoena, or, in the alternative, to shorten time for a hearing on a noticed motion.

On April 4, 2022, the trial court construed the ex parte application as a motion to quash and set a hearing for that motion.

On April 4, 2022, plaintiff filed an opposition to Dr. Rosen's motion. Plaintiff argued, among other things, that the motion was moot because following a continuance of the trial date, plaintiff had withdrawn the trial subpoena.

On April 18, 2022, the trial court conducted the hearing on Dr. Rosen's motion. There is no reporter's transcript or suitable substitute for this proceeding. The court's minute order reflects that plaintiff did not appear at the hearing and the court granted the motion.

---

[5] Defendant had designated Dr. Rosen as an expert witness.

C.    *Trial Testimony Regarding Plaintiff's Injuries*

    1.    <u>Plaintiff's testimony</u>

During direct examination, plaintiff explained that at the hospital, he complained of pain on the left side of his neck, his lower back, and his right wrist. A couple of days later, plaintiff also began to suffer from headaches.

He admitted, however, that he suffered from chronic neck pain prior to the collision. Specifically, plaintiff had "disc issues from a slip at work" in 2003 and had consulted with a worker's compensation doctor and chiropractor about the injury. He also admitted that prior to the collision, he suffered from lower back pain, which was caused by the 20-pound belt that he wore as a peace officer. According to plaintiff, "[e]very officer has lower back problems because of the belts that we wear." And, prior to the collision, plaintiff was treated by a chiropractor for back pain. Plaintiff also admitted that he had suffered from migraine headaches but claimed that he had not experienced a migraine in the five years prior to the collision.

On cross-examination, plaintiff admitted that in 2013, he sustained a shoulder injury, which resulted in his temporary inability to swing a bat or a golf club. He conceded it was "possible" that in 2015 and 2017, he received treatment for shoulder pain, including as recently as four days prior to the collision. Further, in 2019, he continued to receive treatment on his neck as part of an earlier worker's compensation claim. He conceded the possibility that he injured his neck, left shoulder, and ribs in October 2014, when he fell down some stairs. He also admitted that he received intravenous infusion therapy

treatment for migraine headaches in August 2016 and that he likely received treatment for his migraines two months prior to the collision. Finally, he stated that it was possible he fractured his right hand in November 2008.

### 2. Dr. Ronald Maugeri

Plaintiff then introduced excerpts from Dr. Maugeri's deposition testimony. Dr. Maugeri examined plaintiff in December 2017, shortly after the collision, and opined that plaintiff's injuries, including injuries to his right wrist, were caused by the collision. Dr. Maugeri explained that his opinion was based on plaintiff's statement that he had not experienced problems with his wrist before the collision. Plaintiff never told Dr. Maugeri that he sustained any prior injuries to the body parts about which he now complained.

### 3. Dr. Edwin Ashley

Plaintiff also introduced excerpts from Dr. Ashley's deposition testimony. At the time of his testimony, Dr. Ashley was a physician but no longer certified as an orthopedic surgeon. Dr. Ashley concluded that plaintiff's wrist injury resulted from blunt trauma that plaintiff sustained in the automobile collision. Dr. Ashley affirmed, however, that his opinion was based on an assumption about the accuracy of plaintiff's statements. He also admitted that he did not review plaintiff's medical records and, aside from a neck injury plaintiff sustained 10 years ago, he was unaware of any other medical history for plaintiff. Dr. Ashley testified that De Quervain's tenosynovitis has many possible

9

causes, including blunt trauma, fractures, repetitive use/overuse syndromes, and anatomical variance.

### 4. Dr. Phillip Tirman

Plaintiff played a portion of Dr. Phillip Tirman's deposition for the jury. Tirman, a radiologist, reviewed an MRI of plaintiff's spine from 2015 and MRIs of plaintiff's spine and wrist from 2018. The 2015 MRI showed congenital stenosis[6] of plaintiff's spine as well as some abnormalities in plaintiff's spinal discs. The 2018 MRI of plaintiff's spine indicated degenerative changes due to age. The 2018 MRI of plaintiff's wrist showed the existence of a cyst but no injury that was consistent with De Quervain's. Tirman had no opinion as to the cause of the cyst, but explained that they are "very, very common." Tirman compared the MRIs of plaintiff's spine from 2015 and 2018 and concluded there was no significant change to two disc bulges. Further, he observed "disc desiccation" between the two MRI dates but concluded that was something that "just happens over time." As to plaintiff's lumbar MRI, Tirman concluded it depicted a "healthy 45-year-old that has a problem with his L5-S1 facets— long-term problem."

---

[6] Stenosis is "a narrowing or constriction of the diameter of a bodily passage or orifice." (Merriam-Webster Online Dict. <https://www.merriam-webster.com/dictionary/stenosis> [as of Dec. 30, 2024], archived at <https://perma.cc/L492-XB7H>.)

### 5.    Dr. Mark Elzik

Dr. Elzik was an orthopedic hand surgeon retained by plaintiff as an expert witness.  Plaintiff visited Dr. Elzik once in August 2021, approximately two years after his second wrist surgery.  Based on his examination and review of plaintiff's medical records, Dr. Elzik diagnosed plaintiff with De Quervain's tenosynovitis, which was caused by the collision.  Dr. Elzik's opinion was based on his belief that plaintiff did not experience wrist pain until after the collision.  Dr. Elzik acknowledged, however, that plaintiff's medical records showed that on November 8, 2008, plaintiff visited a hospital with a fracture that caused pain to his right wrist and hand.  Further, medical records from December 2008 showed that plaintiff had swelling to his right wrist and on February 7, 2011, plaintiff again visited the hospital and complained of pain to his right hand and wrist.

Dr. Elzik had been hired on two prior occasions by plaintiff's counsel, and had testified only as an expert on behalf of plaintiffs.

## D.    *Verdict*

The trial court gave, among other instructions, CACI Nos. 400, Negligence-Essential Factual Elements, and 430, Causation: Substantial Factor.[7]  On August 3, 2022, the jury returned a

---

[7]    For CACI No. 400, the trial court instructed the jury: "[Plaintiff] claims that he was harmed by [defendant's] negligence.  To establish this claim, he must prove all of the following:  [t]hat [defendant] was negligent, that he was harmed, and that [defendant's] negligence was a substantial factor in

11

unanimous verdict, finding defendant to be negligent but also finding that her negligence was not a substantial factor in causing harm to plaintiff. On September 14, 2022, the trial court entered judgment in favor of defendant.

E. *Procedural History After Trial*

1. Memorandum of Costs

On September 30, 2022, defendant filed a memorandum of costs, which sought a total of $140,090.66. On October 10, 2022, plaintiff filed a motion to strike and/or tax costs.[8] On October 21, 2022, defendant filed an opposition to plaintiff's motion, including invoices and other documents in support of the cost items claimed in her memorandum.

The trial court denied plaintiff's motion and awarded costs in the full amount of $140,090.66.

---

causing [plaintiff's] harm." For CACI No. 430, the court instructed the jury: "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct."

[8] An adverse party may challenge an entire cost memorandum by a motion to strike costs (*Rappenecker v. Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 261) and individual cost items by a motion to tax costs (*id.* at p. 266). A motion to strike costs "in purpose and effect amounts to the same thing as a motion to tax costs, and is so treated." (*Jimenez v. City of Oxnard* (1982) 134 Cal.App.3d 856, 858, fn. 2.)

12

2.  Motions for Judgment Notwithstanding the Verdict and New Trial

On October 7, 2022, plaintiff moved for a judgment notwithstanding the verdict (JNOV), arguing that the jury failed to follow the law as instructed.  He contended that it was uncontroverted that defendant's negligence caused him harm.  Plaintiff also contended that the trial court erred by quashing his subpoena for Dr. Rosen, who would have provided testimony that was "highly probative evidence in favor of causation."  In support, plaintiff's counsel submitted a declaration that purported to describe his post-verdict conversation with the jury foreperson.[9]  Plaintiff also moved for a new trial.

Defendant opposed the motions and objected to the declaration describing the conversation with the foreperson as inadmissible hearsay.  The trial court denied the motions.  Plaintiff timely appealed.

## III.  DISCUSSION

A.  *Motion to Quash Subpoena*

Plaintiff contends the trial court erred by granting Dr. Rosen's motion to quash the subpoena.  We review an order quashing a subpoena for abuse of discretion.  (See *Krinsky v. Doe*

---

[9]  Plaintiff's counsel declared, "After the verdict was read, I spoke with the [j]ury [f]oreperson . . . in the hallway right outside the courtroom.  When asked what the jury felt [p]laintiff failed to prove, [the foreperson] stated that [p]laintiff failed to prove that the collision caused a 'substantial injury' to [p]laintiff."

*6* (2008) 159 Cal.App.4th 1154, 1161.)  To the extent the relevant facts are undisputed and the issue turns on a question of law, we apply a de novo standard of review.  (*Ibid*.)

As we note above, there is no reporter's transcript, or a suitable substitute, of the hearing at which the trial court issued the order quashing the subpoena.  "[T]he absence of a court reporter at trial court proceedings and the resulting lack of a verbatim record of such proceedings will frequently be fatal to a litigant's ability to have his or her claims of trial court error resolved on the merits by an appellate court.  This is so because it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment.  [Citations.]  'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'  [Citations.]  'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.  "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented."'  [Citation.]  "'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed."'  [Citation.]  'Consequently, [the appellant] has the burden of providing an adequate record.  [Citation.]  Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].'  [Citation.]"  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)

Plaintiff has failed to meet his burden of providing an adequate record to review his arguments regarding the order quashing the subpoena.  Accordingly, we affirm that order.

Even assuming that plaintiff could demonstrate the trial court erred in quashing the subpoena, we would still affirm the ruling because plaintiff cannot establish prejudice.  (*Audish v. Macias* (2024) 102 Cal.App.5th 740, 751 ["""To prevail on appeal, an appellant must establish both error and prejudice from that error"""].)  Here, as plaintiff concedes, he could have played Dr. Rosen's deposition testimony at trial, just as he did with multiple other treating and expert witnesses.

B.      *The Jury's Finding of No Causation*

Plaintiff next contends the jury's verdict was not supported by the evidence.  According to plaintiff, because two expert witnesses, Dr. Maugeri and Dr. Ashley, testified that plaintiff's injuries were caused by the collision and that testimony was "uncontradicted," the jury's verdict is not supported by substantial evidence.

"In a case where the trier of fact has determined that the party with the burden of proof did not carry its burden and that party appeals, 'it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.' [Citations.]  Instead, 'where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.'  [Citation.]  Specifically, we ask 'whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a

15

judicial determination that it was insufficient to support a finding.'" [Citation.]" (*Ajaxo, Inc. v. E\*Trade Financial Corp.* (2020) 48 Cal.App.5th 129, 163–164.)

"'[E]xpert testimony, like any other, may be rejected by the trier of fact, so long as the rejection is not arbitrary.' (*Conservatorship of McKeown* (1994) 25 Cal.App.4th 502, 507–510.) Thus, 'as a general rule, "provided the trier of fact does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted. [Citations.]" [Citation.] This rule is applied equally to expert witnesses.' (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 890.) The *exceptional* principle requiring a fact finder to accept uncontradicted expert testimony as conclusive applies *only* in professional negligence cases where the standard of care must be established by expert testimony." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 632.)

Here, plaintiff did not allege professional negligence and the jury could therefore reasonably reject Dr. Maugeri and Dr. Ashley's testimony that plaintiff's injuries were caused by the collision. Indeed, both experts conceded their opinions were based on the assumption that plaintiff accurately reported his medical history. Plaintiff admitted, however, that even before the collision, he experienced chronic neck and back pain and migraines; and his medical history included two prior visits to the hospital for pain in his right wrist, which had been caused by a fracture. Accordingly, plaintiff has failed to demonstrate that the evidence was uncontradicted and unimpeached such that he was entitled to judgment as a matter of law.

Plaintiff's challenges to the trial court's denial of his JNOV motion and his motion for new trial are premised on his

16

contention that substantial evidence did not support the jury's finding as to causation. We reject those arguments for the reasons stated above.

C. *Memorandum of Costs*

Plaintiff next contends that the trial court erred in denying his motion to tax costs because, in his view, a number of the itemized costs were unrecoverable.

1. <u>Applicable Law</u>

Section 1033.5, subdivision (a) provides a list of items allowable as costs pursuant to section 1032.[10] "An award of costs shall be subject to the following: [¶] (1) Costs are allowable if incurred, whether or not paid. [¶] (2) Allowable costs shall be reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation. [¶] (3) Allowable costs shall be reasonable in amount. [¶] (4) Items not mentioned in this section and items assessed upon application may be allowed or denied in the court's discretion." (§ 1033.5, subd. (c).) The losing party may file a motion to dispute any or all items in the prevailing party's costs memorandum by a motion to strike or tax costs. (Cal. Rules of Court, rule 3.1700(b).)

Witness fees for experts not ordered by the court are not allowed as costs, "except when expressly authorized by law."

---

[10] Section 1032, subdivision (b) provides that the prevailing party is entitled to recover costs. It is undisputed that defendant is the prevailing party here.

17

(§ 1033.5, subd. (b)(1).) Section 998, subdivision (c)(1), is one such express authorization: "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court . . . , in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial . . . , or during trial . . . , of the case by the defendant."

We review a cost award for abuse of discretion. (*El Dorado Meat Co. v. Yosemite Meat & Locker Service, Inc.* (2007) 150 Cal.App.4th 612, 617.) We also review the trial court's determination of the reasonableness of a section 998 offer for abuse of discretion. (*Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 531.) If, however, "the determination of whether costs should be awarded is an issue of law on undisputed facts, we exercise de novo review." (*City of Long Beach v. Stevedoring Services of America* (2007) 157 Cal.App.4th 672, 678.)

2.    Reasonableness of Section 998 Settlement Offers

Plaintiff contends that the trial court erred in awarding defendant expert witness fees because defendant's settlement offers were made in "bad faith." As we discuss above, defendant offered plaintiff the following amounts under section 998 to settle

18

the action:  on November 14, 2018, $30,001[11]; and on November 25, 2019, $100,000.  Plaintiff declined both offers.

"It is the general rule that where a party shows a prima facie entitlement to costs, the burden is on an objector to prove the costs should be disallowed.  [Citations.]  Where, as here, the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable and the offeror is eligible for costs as specified in section 998.  The burden is therefore properly on plaintiff, as offeree, to prove otherwise." (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 700.)  In light of the strong evidence regarding plaintiff's preexisting injuries, plaintiff cannot demonstrate that defendant's offers were unreasonable.  Accordingly, the trial court did not err by awarding expert witness fees as costs to defendant.

### 3. Reasonably Necessary Costs

Plaintiff challenges various of the cost item awards on the grounds that they were not reasonably necessary.  Specifically, he challenges the court's award of:  (1) filing fees for an unsuccessful motion for a change of venue; (2) filing fees for a motion which defendant later withdrew; (3) fees for service of process on witnesses who did not testify at trial; (4) costs for trial exhibits

---

[11]     Plaintiff contends the trial court erred when it awarded expert witness fees for costs incurred prior to defendant's November 25, 2019, settlement offer.  Plaintiff's contention is meritless as it is undisputed that defendant made her first section 998 offer on November 14, 2018.

that defendant did not introduce at trial; and (5) expert fees for witnesses who did not testify at trial.

"Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and its decision is reviewed for abuse of discretion." (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774.) Allowable costs include filing and motion fees. (§ 1033.5, subd. (a)(1).) Further, a court has discretion to award costs for trial exhibits. (§ 1033.5, subd. (c)(4); *Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 667.) Finally, as we discuss above, expert fees are allowable under section 998.

We reject plaintiff's contention that defendant was not entitled to recover filing fees for an unsuccessful or withdrawn motion. (See *Naser v. Lakeridge Athletic Club* (2014) 227 Cal.App.4th 571, 576 [affirming allowance of award of jury fee as costs even though no jury trial took place because defendant "could not have known [when it paid the jury fee] that a jury trial would be unnecessary. The fee was a reasonable litigation expense and was recoverable under section 1033.5, subdivision (a)(1)"].) Similarly, we reject plaintiff's contention that the trial court abused its discretion when it awarded fees to secure the testimony of witnesses who did not testify at trial, expert fees for witnesses who did not testify at trial, and costs for exhibits that defendant did not introduce at trial. (See *Garcia v. Tempur-Pedic North America, LLC* (2024) 98 Cal.App.5th 819, 824–825; *Segal v. ASICS America Corp., supra,* 12 Cal.5th 651 at p. 667 [costs for exhibits not used at trial awardable at trial court's discretion under § 1033.5, subd. (c)(4)]; *Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1266 [no abuse of discretion where trial court

20

awarded claimed expert witness fees under § 998, even though experts did not appear at trial].)

### 4. Documentation of Costs

Plaintiff additionally contends that the trial court should have taxed several of defendant's requested cost items on the grounds that defendant did not submit adequately detailed documents in support. For example, plaintiff contends that the invoices that defendant submitted in support of her requests for costs for witness fees to Jeff Bruno, whom defendant explained she retained in order to address plaintiff's loss of income and earning capacity claims, did not provide an adequate description of the services Bruno performed or his hourly rate.[12]

"'[T]he mere filing of a motion to tax costs may be a "proper objection" to an item, the necessity of which appears doubtful, or which does not appear to be proper on its face. [Citation.] However, "[i]f the items appear to be proper charges, the verified memorandum is prima facie evidence that the costs, expenses and services therein listed were necessarily incurred by the defendant [citations], and the burden of showing that an item is not properly chargeable or is unreasonable is upon the [objecting party]." [Citations.]' (*Nelson v. Anderson*[ (1999)] 72 Cal.App.4th [111,] 131.)

"'If the items in a cost memorandum appear proper, the verified memorandum is prima facie evidence the expenses were necessarily incurred by the' prevailing party. (*Benach v. County*

---

[12] Plaintiff additionally challenges the adequacy of the evidence that supported defendant's request for other expert fees and court reporter fees.

*of Los Angeles* (2007) 149 Cal.App.4th 836, 858.) To controvert this evidence, the burden is on the objecting party to present *evidence* showing the contrary. (*Ibid.* ['Benach's unsubstantiated declaration fails to satisfy this burden[ ]']; see *Jones v. Dumrichob, supra*, 63 Cal.App.4th [at p.] 1266 [matters in memorandum or pleading [do] not meet burden].)" (*Whatley-Miller v. Cooper* (2013) 212 Cal.App.4th 1103, 1115.) "'[M]ere statements' in a motion to strike and attorney declaration 'are insufficient to rebut the prima facie showing.'" (*Rojas v. HSBC Card Services Inc.* (2023) 93 Cal.App.5th 860, 896.)

Here, defendant's verified memorandum of costs was prima facie evidence of her entitlement to an award for the items claimed. And, plaintiff did not meet his burden to demonstrate otherwise. (See *Nelson v. Anderson, supra*, 72 Cal.App.4th at p. 131.) Accordingly, we find no abuse of discretion.

Plaintiff additionally challenges the trial court's award of $67,515 in costs for expert witness fees because defendant's submitted invoices totaled only $64,420. Plaintiff, however, raised this calculation argument only in his reply to defendant's opposition to his motion to tax costs. Because plaintiff did not object to defendant's calculations until his reply, we conclude he has forfeited the argument on appeal. (*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 949–950.)

5. Awarding Costs at Court's Discretion

Plaintiff argues the trial court erred by awarding costs at its discretion pursuant to section 1033.5, subdivision (c)(4). Without detailing each of plaintiff's arguments, we provide here

22

an example of the types of challenges to the costs award he raises on appeal: (1) the court should not have awarded $265 for a canceled videographer because plaintiff had hired his own videographer and therefore defendant should not have ordered one; and (2) the court should not have awarded expert costs for Dr. Stuart Kuschner because, in plaintiff's view, Kuschner spent too much time reviewing medical records.

Our review of the record demonstrates that the trial court did not abuse its discretion when it concluded that the costs defendant sought under section 1033.5, subdivision (c)(4) were reasonably necessary at the time they were incurred. (See, e.g. *Garcia v. Tempur-Pedic North America, LLC, supra*, 98 Cal.App.5th at p. 825 [witnesses' failure to appear for deposition was not a reason to deny costs]; *Rojas v. HSBC Card Services Inc., supra*, 93 Cal.App.5th at p. 893 [reasonableness of amount of costs awarded reviewed under abuse of discretion standard].)

### 6. Awarding Costs for Expenses Explicitly Excluded

Plaintiff also argues that the trial court erred by failing to tax costs that were explicitly excluded under section 1033.5.

#### a. Subpoenaed Records

Plaintiff argues that $20,805.89 in costs related to subpoenaing records, which defendant explained were for business records for a deposition, should be taxed because defendant did not use these records at trial. Plaintiff additionally contends that defendant could not recover costs for both subpoenaed records and trial exhibits. We disagree. "[O]btaining

23

business records through a deposition subpoena is a 'deposition' within the plain meaning of the Civil Discovery Act." (*Naser v. Lakeridge Athletic Club, supra*, 227 Cal.App.4th at p. 578.)  And, the cost of "taking" depositions is an allowable cost.  (§ 1033.5, subd. (a)(3).)  We find no abuse of discretion.

   b.  Investigative Services

   Plaintiff contends that $1,633.30 for Paramount Investigative Services and $2,887.50 for Marshall Investigative Group should be taxed.  Defendant concedes that those costs were related to investigative services, which are excluded costs. (§ 1033.5, subd. (b)(2).)  Accordingly, we will modify the judgment to reduce the costs award by $4,520.80.

## IV.   DISPOSITION

The judgment is modified to reduce the cost award by $4,520.80, for a total award of $135,569.86.  As so modified, the judgment is affirmed.  Defendant is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

BAKER, Acting P. J.

MOOR, J.

25